WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Robert J. Lemons
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers OTC Derivatives Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

| | | |
|---|---|---|
| BANIA BROTHERS, L.L.C., BAUPOST GROUP SECURITIES, L.L.C., and WOODERSON PARTNERS, L.L.C., | : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adversary No. 14-02095 (SCC) |
| | : | |
| LEHMAN BROTHERS OTC DERIVATIVES INC. and LEHMAN BROTHERS HOLDINGS INC., solely in its capacity as plan administrator, | : : : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------x

# MEMORANDUM OF LAW
## OF LEHMAN BROTHERS HOLDINGS INC.
## AND LEHMAN BROTHERS OTC DERIVATIVES INC.
## IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT

# TABLE OF CONTENTS

Preliminary Statement ........................................................................................................ 1

Jurisdiction and Venue ...................................................................................................... 3

Background ......................................................................................................................... 3

    I.    General Case Background ................................................................................ 3

    II.    The Settlements and the Plan .......................................................................... 4

    III.    The Complaint ................................................................................................. 6

Argument ............................................................................................................................ 7

    I.    Applicable Grounds for Relief ....................................................................... 8

        A.    The Court Lacks Subject Matter Jurisdiction ..................................... 8

        B.    Plaintiffs Fail to State a Claim .......................................................... 10

        C.    Defendants Are Entitled, in the Alternative, to Summary Judgment in Their Favor ....................................................................................... 11

    II.    Claims for Postpetition Interest Have Been Released ................................... 13

        A.    The Plain Language of the Releases Bars Plaintiffs' Claims for Postpetition Interest ........................................................................... 13

        B.    The Claims Traders Are Bound by the Releases in the Settlements ................... 19

    III.    Alternatively, Any Transfer That Increased the Amounts of Claims Against LOTC Violated the Automatic Stay and Is Void *Ab Initio* ........................................... 20

Conclusion ........................................................................................................................ 22

WEIL:\95092183\6\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 19 Court St. Assocs., LLC*,
   190 B.R. 983 (Bankr. S.D.N.Y. 1996) ...............................................................................8

*In re 48th St. Steakhouse, Inc.*,
   835 F.2d 427 (2d Cir. 1987) ............................................................................................20

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*,
   896 N.E.2d 61 (N.Y. 2008)...............................................................................................14

*In re Allegiance Telecom, Inc.*,
   356 B.R. 93 (Bankr. S.D.N.Y. 2006) .........................................................................14, 17

*Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*,
   875 F. Supp. 2d 352 (S.D.N.Y. 2012)...............................................................................15

*In re AMR Corp.*,
   730 F.3d 88 (2d Cir. 2013) ..............................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................10

*Booth v. 3669 Delaware, Inc.*,
   703 N.E.2d 757 (N.Y. 1998).........................................................................................9, 16

*Centro Empresarial S.A. v. Am. Movi, S.A.B. de C.V.*,
   952 N.E.2d 995 (N.Y. 2011)..................................................................................10, 14, 17

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ............................................................................................11

*Cortec Indus. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ..............................................................................................11

*In re Colonial Realty Co.*,
   980 F.2d 125 (2d Cir. 1992) ............................................................................................20

*In re Dana Corp.*,
   574 F.3d 129 (2d Cir. 2009) ............................................................................................12

*Diaz v. Lexington Exclusive Corp.*,
    874 N.Y.S.2d 77 (1st Dep't 2009) .....................................................................14

*In re Enron Corp.*,
    294 B.R. 232 (Bankr. S.D.N.Y. 2003) .............................................................12

*Frisone v. Pepsico, Inc.*,
    369 F. Supp. 2d 464 (S.D.N.Y. 2005) ...............................................................9

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
    845 N.E.2d 1265 (N.Y. 2006) ...........................................................................18

*Greenfield v. Philles Records, Inc.*,
    780 N.E.2d 166 (N.Y. 2002) .....................................................................13, 14

*Gurary v. Winehouse*,
    190 F.3d 37 (2d Cir. 1999) .........................................................................11, 12

*In re Ideal Mutual Ins. Co.*,
    571 N.Y.S.2d 18 (1st Dep't 1991) .....................................................................9

*Innophos, Inc. v. Rhodia, S.A.*,
    832 N.Y.S.2d 197 (1st Dep't 2007) .................................................................17

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002) ...............................................................................14

*Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*,
    325 N.E.2d 137 (N.Y. 1975) ............................................................................19

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
    655 F.3d 136 (2d Cir. 2011) .............................................................................10

*Jaramillo v. Weyerhaeuser Co.*,
    536 F.3d 140 (2d Cir. 2008) .............................................................................12

*LeBlanc v. Cleveland*,
    198 F.3d 353 (2d Cir. 1999) ...............................................................................9

*In re Lehman Bros. Holdings Inc.*,
    Ch. 11 Case No. 08-13555 (SCC), 2014 WL 2766164
    (Bankr. S.D.N.Y. June 18, 2014) .....................................................................10

*In re Lehman Bros. Holdings Inc.*,
    Ch. 11 Case No. 08-13555 (SCC), 2014 WL 4086037
    (Bankr. S.D.N.Y. Aug. 19, 2014).................................................................10, 11

iv

*Makarova v. U.S.*,
  201 F.3d 110 (2d Cir. 2000) ...................................................................................8

*Mallery v. NBC Universal, Inc.*,
  331 F. App'x 821 (2d Cir. June 3, 2009).............................................................12

*Mastrobruono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52, 63 (1995) .........................................................................................18

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ...........................................................................................8, 9

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ..............................................................................................15

*Morlee Sales Corp. v. Mfrs. Trust Co.*,
  172 N.E.2d 280, 282 (N.Y. 1961) .........................................................................14

*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ...................................................................................9

*In re MPM Silicones, LLC*,
  No. 14-22503-rdd, 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014)................. 13, 20, 21

*N.Y. & Presbyterian Hosp. v. Country-Wide Ins. Co.*,
  958 N.E.2d 88 (N.Y. 2011)................................................................................ 13, 19

*Nike, Inc. v. Already, LLC*,
  663 F.3d 89 (2d Cir. 2011) ....................................................................................8

*Plander Lanes, Inc. v. Bellamore*,
  580 N.Y.S.2d 452 (2d Dep't 1992) .......................................................................9

*Rosalie Estates, Inc. v. Colonia Ins. Co.*,
  643 N.Y.S.2d 59 (1st Dep't 1996) .......................................................................14

*Russian Standard Vodka USA, Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
  523 F. Supp. 2d 376 (S.D.N.Y. 2007) ................................................................8, 9

*S&S NY Holdings, Inc. v. Able Energy, Inc.*,
  No. 12 Civ. 2388 (KBF), 2012 WL 3084112 (S.D.N.Y. July 27, 2012) ...............16

*Seifert, Hirshorn & Packman, Inc. v. Ins. Co. of N. Am.*,
  321 N.Y.S.2d 815 (1st Dep't 1971) ......................................................................17

*In re Solutia, Inc.*,
  379 B.R. 473 (Bankr. S.D.N.Y. 2007) ............................................................20, 21

v

*Tavoulareas v. Bell*,
    738 N.Y.S.2d 847 (1st Dep't 2002) ...................................................................17

*In re Texaco, Inc.*,
    73 B.R. 960 (Bankr S.D.N.Y. 1987) ............................................................20, 21

*Tortora v. SBC Commc'ns, Inc.*,
    739 F. Supp. 2d 427 (S.D.N.Y. 2010) ..............................................................12

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
    807 N.E.2d 876 (N.Y. 2004)................................................................................14

*Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*,
    623 N.E.2d 531 (N.Y. 1993)................................................................................18

**Statutes**

11 U.S.C. § 105.............................................................................................................3

11 U.S.C. § 362(a) ......................................................................................................20

11 U.S.C. § 362(d)(1)..................................................................................................21

11 U.S.C. § 365.............................................................................................................3

28 U.S.C. § 157(b) ........................................................................................................3

28 U.S.C § 1334.............................................................................................................3

28 U.S.C. § 2201(a) ......................................................................................................8

**Other Authorities**

Fed. R. Bankr. P. 7012 ............................................................................................8, 10

Fed. R. Bankr. P. 7056 ...............................................................................................12

Fed. R. Civ. P. 12(b)(1)............................................................................................8, 9

Fed. R. Civ. P. 12(b)(6)..............................................................................................10

Fed. R. Civ. P. 56(c)...................................................................................................12

Local Bankruptcy Rule 7056-1 ..................................................................................13

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its
    Affiliated Debtors............................................................................................1, 3, 5, 20

WEIL:\95092183\6\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), files this memorandum of law in support of

its and Lehman Brothers OTC Derivatives Inc.'s ("LOTC," and, together with the Plan

Administrator, "Defendants") motion to dismiss the Complaint for Declaratory Judgment, dated

August 15, 2014 (ECF No. 1) (the "Complaint"),[1] of Bania Brothers, L.L.C. ("Bania"), Baupost

Group Securities, L.L.C. ("Baupost"), and Wooderson Partners, L.L.C. ("Wooderson"; each of

the foregoing, a "Plaintiff" or "Claims Trader" and, together, the "Plaintiffs" or "Claims

Traders").  In support of the motion, the Plan Administrator respectfully represents as follows:

## PRELIMINARY STATEMENT

The Claims Traders have no right to any postpetition interest because such claims

have been irrevocably released.  The Claims Traders overlook this fundamental and

insurmountable hurdle to a declaration that their costs of funds are applicable to the calculation

of their claims for postpetition interest against LOTC.

More specifically, each of their claims (the "Satisfied Claims") was allowed

pursuant to a Court-approved or authorized termination agreement (each, a "Settlement" and,

collectively, the "Settlements") between LOTC and LOTC's original contract counterparty (each

a "Contract Counterparty" and, together, the "Contract Counterparties").[2]  The Settlements

contain virtually identical releases of all claims or causes of action whatsoever, whether known

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[2] The Contract Counterparties are Diamondback Master Fund Ltd. (claim no. 23526); Lincoln National Reinsurance Company (Barbados) Limited (claim no. 66121); SBA Communications Corporation (claim no. 22613); VeriFone Systems, Inc. (claim no. 67555); Societe Generale (claim no. 15919); and American Trading and Production Corporation (claim no. 19303).

1

or unknown, arising under or related to certain derivatives contracts and transactions between

LOTC and the Contract Counterparties. (Decl. of Ralph I. Miller in Support of Mot. of LBHI

and LOTC to Dismiss Adv. Compl. (the "Miller Declaration") Ex. A § 2, Ex. B § 2, Ex. C § 2,

Ex. D ¶ 6, Ex. E § 5(b), Ex. F § 3.)[3] Plaintiffs' claims for postpetition interest and declaratory

relief fall squarely within the four corners of the releases because they "arise under" and "relate

to" the derivatives contracts and transactions that were settled.

Four of the six Settlements reiterate that the recovery in respect of each of the

Satisfied Claims "*shall not exceed*" fixed dollar amounts (defined in the Settlements as the

"Settlement Amount," the "Final Settlement Amount," or the "Lehman Allowed Claim"),

creating an additional bar to recovery and declaratory relief. (Miller Decl. Ex. A § 1, Ex. B § 1,

Ex. E § 2(a), Ex. F § 2 (emphasis added).) The Claims Traders have already received Plan

Distributions totaling the fixed dollar maximum amounts for these Satisfied Claims. They are

not entitled to any further recovery from LOTC on these Satisfied Claims.

Alternatively, if the Court were to find that the Claims Traders are entitled to

postpetition interest, the automatic stay voided *ab initio* the transfer of postpetition interest

claims to the Claims Traders to the extent such transfers increased the amount of such claims

against LOTC. In that event, the Claims Traders would be bound by the rates that would have

applied to the Contract Counterparties.

For these reasons, the Complaint should be dismissed.

---

[3] The Settlements are attached as Exhibits A–F to the Miller Declaration.

WEIL:\95092183\6\58399.0011

<u>**JURISDICTION AND VENUE**</u>

This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1(b) of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

<u>**BACKGROUND**</u>

**I.      <u>General Case Background</u>**

Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries (the "<u>Chapter 11 Entities</u>"), including LOTC, commenced with this Court voluntary cases (together, the "<u>Chapter 11 Cases</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  LOTC commenced its Chapter 11 Case on October 3, 2008.

On December 16, 2008, the Court entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (ECF No. 2257) (as amended and/or supplemented from time to time, the "<u>Derivatives Settlement Order</u>").  The Derivatives Settlement Order authorized the Chapter 11 Entities to enter into binding settlement agreements, such as the Settlements, in respect of their prepetition derivatives contracts without further Court approval, subject to the consent of the statutory committee of unsecured creditors.

On December 6, 2011, the Court approved and entered the *Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (ECF No. 23023) (the "<u>Confirmation Order</u>").  The Plan became effective on March 6, 2012.  Pursuant to section 6.1 of the Plan, the Plan Administrator is authorized, among other things, "to carry out and implement all provisions of the Plan."

WEIL:\95092183\6\58399.0011

## II.   The Settlements and the Plan

Each Satisfied Claim was allowed pursuant to a Settlement between LOTC and a Contract Counterparty.  (Compl. ¶ 14 (alleging that "[d]uring the pendency of LOTC's bankruptcy, each [Contract Counterparty] . . . entered into an agreement with LOTC to allow its Claims in LOTC's Chapter 11 case").)

(a)   After settlement negotiations regarding the termination of the parties' underlying transactions, on August 12, 2009, Diamondback Master Fund Ltd. ("Diamondback"), LOTC, and LBHI entered into a Settlement (the "Claim 23526 Settlement").  Diamondback was given an unsecured claim against LOTC in the amount of $4,253,903.66, and Diamondback filed proof of claim number 23526 in that amount.

(b)   Claim 66121 was originally asserted as Claim 12564 in the amount of $18,556,159.00.  After settlement negotiations, on November 2, 2009, Lincoln National Reinsurance Company (Barbados) Limited ("Lincoln"), LOTC, and LBHI entered into a Settlement (the "Claim 66121 Settlement").  Lincoln was given an unsecured claim in the amount of $17,237,288.33 and filed Claim 66121 as an amended and superseding claim in that amount.

(c)   Claim 22613 was asserted in the amount of $49,566,165.00.  After settlement negotiations, on February 7, 2011, SBA Communications Corporation ("SBACC"), LOTC, and LBHI entered into a Settlement (the "Claim 22613 Settlement").  SBACC was given an unsecured claim in the reduced amount of $30,000,000.00.

(d)   After settlement negotiations regarding various transactions between them, on June 3, 2011, VeriFone Systems, Inc. ("VeriFone") and LOTC entered into a Settlement (the "Claim 67555 Settlement"), which was approved by the Court on June 16, 2011.  VeriFone was given an unsecured claim in the amount of $9,000,000.00.

(e)   Claim 15919 was asserted as a secured claim in the unliquidated amount of not less than $24,931,836.69.  After settlement negotiations, on June 30, 2011, Societe Generale, LOTC, and LBHI entered into a Settlement (the "Claim 15919 Settlement").  Societe Generale was given an unsecured claim in the amount of $25,203,438.

(f)   Claim 19303 was asserted in the amount of $33,697,302.30.  After settlement negotiations, on August 22, 2011, American Trading and Production Corporation ("ATPC"), LOTC, and LBHI entered into a

4

Settlement (the "Claim 19303 Settlement").   ATPC was given as an unsecured claim in the reduced amount of $26,375,000.00.

(*See* Miller Decl. Ex. A § 1, Ex. B § 1, Ex. C § 1, Ex. D ¶ 3, Ex. E § 2(a), Ex. F § 2.)  The Settlements were in effect when the Claims Traders purchased the Satisfied Claims.  (Compl. ¶¶ 14, 15.)

Pursuant to section 5.30 of the Plan, each general unsecured claim against LOTC is entitled to, among other things, "its Pro Rata Share of . . . Available Cash . . . ."  Plan § 5.30. On the fourth Distribution Date under the Plan, LOTC paid 100% of the principal amount of the Allowed Claims against its estate. *See Notice Regarding Fourth Distribution Pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (ECF No. 40225), Ex. C at 1 (Bankr. S.D.N.Y. Sept. 26, 2013).  Pursuant to section 8.13(a) of the Plan, the Satisfied Claims were "deemed satisfied in full" when the Claims Traders received Distributions in the allowed amounts of such Claims.  Plan § 8.13(a).  Section 8.13(c) of the Plan states:

> To the extent that any Debtor has Available Cash after all Allowed Claims against that Debtor have been satisfied in full in accordance with Section 8.13(a) of the Plan, each holder of each such Allowed Claim shall receive its Pro Rata Share of further Distributions, if any, to the fullest extent permissible under the Bankruptcy Code in satisfaction of postpetition interest on the Allowed amount of such Claims at the rate applicable in the contract or contracts on which such Allowed Claim is based (or, absent such contractual rate, at the statutory rate) until such time as all postpetition interest on all such Allowed Claims has been paid in full.

The Settlements contain broad releases of all claims or causes of action, whether known or unknown, arising under or relating to the derivatives contracts and transactions between LOTC and the Contract Counterparties.  Specifically, the Settlements each contain the following release:

> each Party . . . hereby generally releases, discharges and acquits each other Party . . . from ***all manners of action, causes of action . . . debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever***, other than the [Allowed Claim and] the rights and obligations of the Parties set forth under this Settlement, whether in law or in equity, ***whether based on contract*** (including, without limitation, quasi-contract or estoppel), statute, regulation, . . . ***or otherwise***, accrued or unaccrued, ***known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent***, that such releasing Party ever had or claimed to have, or now has or claims to have presently or ***at any future date***, against any Released Party ***arising under or related to*** [the derivatives contracts between the parties] and [the transactions thereunder].

(*Id.* Ex. A § 2, Ex. B § 2, Ex. C § 2, Ex. D ¶ 6, Ex. E § 5(b), Ex. F § 3 (in each of the foregoing, emphases added).)

The Settlements for claim numbers 23526, 66121, 15919, and 19303 also state that the recovery in respect of each of those four Satisfied Claims "*shall not exceed*" fixed dollar amounts (defined in the Settlements as the "Settlement Amount," the "Final Settlement Amount," or the "Lehman Allowed Claim"). (*Id.* Ex. A § 1, Ex. B § 1, Ex. E § 2(a), Ex. F § 2 (in each of the foregoing, emphasis added).)

The Settlements governing claims 23526, 22613, 66121, 15919, and 19303 expressly provide that they are binding on the successors and assigns of the parties thereto. (*Id.* Ex. A § 8, Ex. B § 10, Ex. C § 11, Ex. E § 16, Ex. F § 12.)

The Settlements are governed by New York law. (*Id.* Ex. A § 6, Ex. B § 7, Ex. C § 8, Ex. D ¶ 12, Ex. E § 15, Ex. F § 9.)

## III.    The Complaint

On August 15, 2014, the Claims Traders commenced this adversary proceeding by filing the Complaint with the Court. (*See* Compl.)

The Claims Traders assert that "during the pendency of LOTC's bankruptcy, each [Contract Counterparty] . . . entered into an agreement with LOTC to allow its Claims in LOTC's Chapter 11 case." (Compl. ¶ 14 (emphasis added).) These agreements upon which the Complaint relies are the Settlements that have been supplied to the Court as attachments to the Miller Declaration. (*See* Miller Decl. Exs. A–F.) The Claims Traders allege that each Contract Counterparty transferred the Settled Claims to Plaintiffs thereafter. (Compl. ¶ 15.)

The Claims Traders assume (incorrectly) that they are entitled to postpetition interest. They further allege that under the derivatives contracts, it is their cost-of-funds rates— and not the cost-of-funds rates of the Contract Counterparties—that apply to the calculation of postpetition interest claims against LOTC. And, finally, the separate Claims Traders allege that each of their cost-of-funds rates is identical and exactly 14%. (Compl. ¶ 1, Ex. C.)

## ARGUMENT

Plaintiffs' claims for postpetition interest have been released, and, as such, the declaration sought by the Complaint is irrelevant. Even if the Court finds that the Claims Traders are entitled to postpetition interest, the Claims Traders' attempt to increase the amounts of such claims based solely on postpetition claims transfers without LOTC's consent constitutes a clear violation of the automatic stay. As a result, such transfers are void *ab initio*, and the cost-of-funds rate of the Contract Counterparties would apply. Therefore, under any scenario, the Complaint must be dismissed because there is no "case of actual controversy" over which the Court has subject matter jurisdiction, 28 U.S.C. § 2201(a), and Plaintiffs have not stated and cannot state a claim for which relief can be granted.[4]

---

[4] The Plan Administrator reserves all rights on behalf of LBHI and LOTC to assert additional defenses, counterclaims, or grounds for relief.

## I.  Applicable Grounds for Relief

### A.  The Court Lacks Subject Matter Jurisdiction

A court must "consider only whether the adversity of legal interests that exists between the parties is 'real and substantial' and '[is susceptible to] specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95, 96 (2d Cir. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted)).

"Fed. R. Civ. P. 12(b)(1) is incorporated into bankruptcy procedure by Fed. R. Bankr. P. 7012." *In re 19 Court St. Assocs., LLC*, 190 B.R. 983, 990 (Bankr. S.D.N.Y. 1996). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [ ] court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "The Declaratory Judgment Act does not expand the subject matter jurisdiction of the federal courts." *Nike*, 663 F.3d at 95. It provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).

A contract can bar a party from seeking a declaratory judgment regarding the subject matter of the contract. *See, e.g.*, *Nike*, 663 F.3d at 96, 97 (holding that an action seeking a declaratory judgment was properly dismissed as nonjusticiable where plaintiff had previously agreed not to sue defendant regarding subject matter of action). The United States District Court for the Southern District of New York has found that where a party has "waived [its] right to sue . . . there is no 'substantial controversy, between [ ] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of [a] declaratory judgment.'" *Russian*

*Standard Vodka USA, Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 382 (S.D.N.Y. 2007) (quoting *MedImmune*, 549 U.S. at 127)).

        The Court may consider the Settlements in ruling on Defendants' motion to dismiss for lack of subject matter jurisdiction. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a . . . court may consider evidence outside the pleadings."). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999); *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469, 470, 473 (S.D.N.Y. 2005) (dismissing for lack of subject matter jurisdiction based on affidavits regarding the locations of defendant's operations and principal place of business).

        As described above and more fully in Section II below, Plaintiffs' claims for postpetition interest have been released pursuant to the Settlements, thereby depriving the Court of subject matter jurisdiction over the Complaint. *See, e.g.*, *Plander Lanes, Inc. v. Bellamore*, 580 N.Y.S.2d 452, 454 (2d Dep't 1992) (dismissing action seeking declaratory judgment on grounds that "[i]t is clear that the release and the stipulation of settlement are a bar to any claims arising prior to their execution"); *In re Ideal Mutual Ins. Co.*, 571 N.Y.S.2d 18, 19 (1st Dep't 1991) (dismissing action seeking declaratory judgment as nonjusticiable where potential claims against plaintiff had been contractually released); *see also Booth v. 3669 Delaware, Inc.*, 703 N.E.2d 757, 758 (N.Y. 1998) ("Where, as here, the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties[.  Absent fraud,] consistent with public policy favoring enforcement of settlements, the release plaintiff signed should be enforced according to its terms, and plaintiff's claim dismissed.") (citations omitted).

WEIL:\95092183\6\58399.0011

**B.**     <u>Plaintiffs Fail to State a Claim</u>

As this Court has previously recognized in these Chapter 11 Cases, "Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) ('<u>Rule 12(b)(6)</u>'), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted." *In re Lehman Bros. Holdings Inc.*, Ch. 11 Case No. 08-13555 (SCC), 2014 WL 4086037, at *2, *3 (Bankr. S.D.N.Y. Aug. 19, 2014) ("<u>SkyPower</u>") (sustaining Plan Administrator's objection to claims); *In re Lehman Bros. Holdings Inc.*, Ch. 11 Case No. 08-13555 (SCC), 2014 WL 2766164, at *2 (Bankr. S.D.N.Y. June 18, 2014) (same). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs cannot allege "sufficient factual matter" to state a plausible claim to relief because the Settlements, which govern the Satisfied Claims, completely bar Plaintiffs from asserting claims to relief based on the underlying derivatives contracts. *Iqbal*, 556 U.S. at 678. It is appropriate for a court to dismiss claims under Rule 12(b)(6) based on a valid release. "Under New York law . . . 'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'" *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (affirming dismissal of complaint under Rule 12(b)(6) based on valid release; quoting *Centro Empresarial S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011)).

In addition to the authority cited above that permits the Court to consider the Settlements for lack of subject matter jurisdiction, the Court may also consider the Settlements in ruling on Defendants' motion to dismiss for failure to state a claim. As the Court has recognized

WEIL:\95092183\6\58399.0011

in these Chapter 11 Cases, it "may consider documents omitted from the plaintiff's complaint . . . but attached by a defendant to its motion to dismiss" where "there was undisputed notice to plaintiffs of [the documents'] content and [the documents] were integral to plaintiffs' claim." *SkyPower*, 2014 WL 4086037, at *3.  Further, the United States Court of Appeals for the Second Circuit has stated that:

> on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47, 48 (2d Cir. 1991)).

Plaintiffs have undisputed notice of the Settlements and their contents.  Plaintiffs relied on the Settlements in commencing this adversary proceeding; Plaintiffs have incorporated the Settlements by reference into their Complaint; the Settlements are integral to the Complaint; and, as Court-approved or Court-authorized documents, the Court may take judicial notice of the Settlements.

C.    **Defendants Are Entitled, in the Alternative, to Summary Judgment in Their Favor**

To the extent necessary, the Court may properly treat Defendants' motion as a motion for summary judgment and rule in favor of Defendants based upon the Settlements. Plaintiffs have relied on the Settlements to support their Complaint and should not be surprised by Defendant's reliance thereupon.  Where "the [plaintiff] should reasonably . . . recognize[] the possibility that the motion might be converted into one for summary judgment[ and is] not taken by surprise [or] deprived of reasonable opportunity to meet facts outside the pleadings," conversion of a motion to dismiss into one for summary judgment is appropriate.  *Gurary v.*

*Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Mallery v. NBC Universal, Inc.*, 331 F. App'x 821, 822 (2d Cir. June 3, 2009) (quoting *Gurary*, 190 F.3d at 43), *cert. denied*, 130 S.Ct. 2378 (Apr. 26, 2010), *reh'g denied*, 130 S.Ct. 3496 (June 21, 2010).

In general, Federal Rule of Civil Procedure 56 "applies in adversary proceedings." Fed. R. Bankr. P. 7056. Under Rule 56(c), "[s]ummary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Tortora v. SBC Commc'ns, Inc.*, 739 F. Supp. 2d 427, 435 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 56(c)). "When the burden of proof at trial would fall on the nonmoving party [*i.e.*, the Plaintiffs here], it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* "The non-moving party must do more than show that there is some metaphysical doubt as to the material facts, and it may not rely on conclusory allegations or unsubstantiated speculation." *Tortora*, 739 F. Supp. 2d at 435 (internal quotations omitted).[5]

---

[5] Defendants' alternative request to treat the motion as a motion for summary judgment does not depend on facts outside of the Complaint and the Settlements. Therefore, Defendants have not concurrently filed a statement of undisputed material facts pursuant to Rule 7056-1 of the Local Bankruptcy Rules for the Southern District of New York. *See In re Dana Corp.*, 574 F.3d 129, 145, 146 (2d Cir. 2009) (holding that Bankruptcy Court's conversion of claim objection to motion for summary judgment was not improper, even though the "[o]bjection . . . was not accompanied by a separate statement of undisputed facts," where, among other things, "the [o]bjection explicitly requested summary judgment [and] set out the criteria for granting a motion for summary judgment"); *In re Enron Corp.*, 294 B.R. 232, 235 n.1, 244 (Bankr. S.D.N.Y. 2003) (holding that conversion of motion to dismiss to motion for "summary judgment [wa]s appropriate" where "Debtors have represented that, given the generally uncontested nature of the facts of this case, they did not file a Rule 7056-1 statement"). Should the Court require a 7056-1 statement, Defendants will supply one promptly upon request.

WEIL:\95092183\6\58399.0011

II.    **Claims for Postpetition Interest Have Been Released**

The Court lacks subject matter jurisdiction and the Complaint fails to state a claim because the Satisfied Claims are subject to Settlements that expressly released LOTC from any liability arising under or relating to the derivatives contracts and transactions between LOTC and its Contract Counterparties, which includes liability for interest.  In consideration for the allowance of the Satisfied Claims, the Contract Counterparties gave up the right to seek any further or other damages arising out of or related to the derivatives contracts, including postpetition interest.  (*See* Miller Decl. Ex. A § 2 ("In consideration of each other Party's execution of this Termination Agreement . . . , each Party . . . hereby generally releases . . . ."), Ex. B § 2 (same) Ex. C § 2 (same), Ex. E § 5(a) (same), Ex. F § 3 (same); Ex. D ¶ 6 (granting release "[u]pon the allowance of the Proof of Claim").)

The Claims Traders are bound by those releases.  By definition, the Claims Traders could acquire only those rights that the Contract Counterparties were able to transfer. *See, e.g., N.Y. & Presbyterian Hosp. v. Country-Wide Ins. Co.*, 958 N.E.2d 88, 93 (N.Y. 2011) ("*[Y]ou cannot assign your right to benefits . . . if you had no right to those benefits in the first place.*") (emphasis added).  As demonstrated below, the Contract Counterparties released claims for postpetition interest; the releases remain enforceable against the Claims Traders; and the releases preclude the declaration sought by the Complaint.

A.    **The Plain Language of the Releases Bars Plaintiffs' Claims for Postpetition Interest**

"[I]f [an] agreement on its face is reasonably susceptible to only one meaning, that meaning governs; a court is not free to alter the contract to reflect its personal notions of fairness and equity."  *In re MPM Silicones, LLC*, No. 14-22503-rdd, 2014 WL 4436335 at *3 (Bankr. S.D.N.Y. Sept. 9, 2014) (Drain, J.) (citing *Greenfield v. Philles Records, Inc.*, 780

13

N.E.2d 166, 171 (N.Y. 2002)).  "It is axiomatic that a contract is to be interpreted so as to give

effect to the intention of the parties as expressed in the unequivocal language employed." *Diaz*

*v. Lexington Exclusive Corp.*, 874 N.Y.S.2d 77, 78 (1st Dep't 2009) (emphasis removed)

(quoting *Morlee Sales Corp. v. Mfrs. Trust Co.*, 172 N.E.2d 280, 282 (N.Y. 1961)).  An

"unambiguous provision should simply be given its plain and ordinary meaning." *Rosalie*

*Estates, Inc. v. Colonia Ins. Co.*, 643 N.Y.S.2d 59, 61 (1st Dep't 1996); *accord Int'l Multifoods*

*Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).  "[W]hen parties set down

their agreement in a clear, complete document, their writing should be enforced according to its

terms." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y.

2004) (internal quotation marks omitted).  "This is particularly appropriate if the contract 'was

negotiated between sophisticated, counseled business people negotiating at arm's length." *In re*

*Allegiance Telecom, Inc.*, 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006) (quoting *Vermont Teddy*

*Bear*, 807 N.E.2d at 879).

       Releases are construed—like other contract provisions—according to their plain

language. *See, e.g.*, *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 896

N.E.2d 61, 61, 65, 66 (N.Y. 2008) (holding that contract-based claims against an indenture

trustee were "barred by a release previously executed by plaintiffs as part of a bankruptcy

settlement").  Broad releases are given their full breadth, covering particular claims that are

implicit in their language but not specifically identified. *See Centro Empresarial*, 952 N.E.2d at

1000 ("The broad language of the release reaches 'all manner of actions . . . whatsoever . . .

whether past, present or future, actual or contingent, arising under or in connection with the

[underlying contract] and/or arising out of . . . the ownership of membership interests in [the

subject company].  The phrases 'all manner of actions,' in conjunction with the reference to

WEIL:\95092183\6\58399.0011

'future' and 'contingent' actions, indicates an intent to release defendants from fraud claims, like this one, unknown at the time of contract." (quoting the contractual release provision; citations omitted)).  The term "related to" is broadly defined and construed.  *E.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . .'"); *Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*, 875 F. Supp. 2d 352, 356 (S.D.N.Y. 2012) ("In various contexts, courts have recognized that the term 'relate to' has a 'broad' meaning, including merely having 'a connection with' the designated item.") (citations omitted).

Here, each release states, in identical or substantially identical terms:

each Party . . . hereby generally releases, discharges and acquits each other Party . . . from all manners of action, causes of action . . . debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, other than the rights and obligations of the Parties set forth under this Termination Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, . . . or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have, or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination. . . .

(Miller Decl. Ex. A § 2; *see id.* Ex. B § 2, Ex. C § 2; Ex. D ¶ 6, Ex. E § 5(a), Ex. F § 3.)

Plaintiffs' demands for postpetition interest fall squarely within the scope of the releases.  Any right to be paid postpetition interest based on the derivative contracts is a "debt, demand, right, damage, cost, expense, and claim of *every* kind, nature and character *whatsoever* . . . whether . . . *known or unknown . . . certain or contingent* . . . arising under or related to the [derivatives contracts or transactions]." *Id.* (emphasis added).  "It is black letter law that upon

execution of such a release of claims based upon prior agreements, the releasor (*i.e.*, the plaintiff) may not bring any claims based upon those prior agreements." *S&S NY Holdings, Inc. v. Able Energy, Inc.*, No. 12 Civ. 2388 (KBF), 2012 WL 3084112, at *5 (S.D.N.Y. July 27, 2012); *see Booth*, 703 N.E.2d at 758.

Here, but for the underlying derivatives contracts and transactions between LOTC and its Contract Counterparties, there could be no right to any payment on account of such claim, including postpetition interest. Excluding disputes regarding postpetition interest from the releases would have been inconsistent with a full and final settlement of all disputes between the parties that were being resolved by the Settlements. The rate of interest payable under the derivatives contracts is inherently factual because the rate is tied to the borrowing cost of the non-defaulting party, and therefore would be costly and time consuming to resolve through litigation or otherwise.

Further, the Settlements for claim numbers 23526, 66121, 15919 and 19303 reiterate that recovery by Plaintiffs is expressly capped at fixed dollar amounts (defined as the "Settlement Amount," "Final Settlement Amount," or "Lehman Allowed Claim"). Those Settlements provide that "the aggregate recovery . . . in respect of the Allowed [Lehman] Claims shall not exceed the [Settlement Amount, the Final Settlement Amount or the Allowed Lehman Claim]." (*Id.* Ex. A § 1, Ex. B § 1, Ex. E § 2(a), Ex. F. § 2) LOTC has already distributed the Settlement Amount, Final Settlement Amount or the Allowed Lehman Claim amount, as applicable, to holders of these Satisfied Claims. Such claims have, therefore, been satisfied in full pursuant to the express terms of the Settlements and the Plan. The Claims Traders are entitled to nothing more.

16

The releases were "negotiated and executed" by "large corporations engaged in complex transactions in which they were advised by counsel." *Centro Empresarial Cempresa*, 952 N.E.2d at 1001; (*see* Miller Decl. Ex. A § 11 ("This Settlement has been negotiated by the Parties and their respective legal counsel . . . ."), Ex. B § 13 (same), Ex. C § 14 (same), Ex. E § 20 (same), Ex. F § 15 (same), Ex. D at 6 (executed by attorneys for Contract Counterparty and LOTC)). The Satisfied Claims were acquired by similarly sophisticated parties "with their eyes wide open," *see id.* at 1002; (Compl. *passim*). Under these circumstances, courts enforce the bargain struck by the parties to its full breadth, which, here, plainly covers any entitlements to postpetition interest. *See Allegiance Telecom*, 356 B.R. at 102 ("Adherence to the plain language of [the contract], and the refusal to modify it to correct what might have been [one party]'s bad bargain or unilateral mistake is particularly appropriate given the parties' general commercial sophistication and, specifically, their experience in the sale of businesses and, even more specifically, their experience in the sale of businesses out of bankruptcy."); *Seifert, Hirshorn & Packman, Inc. v. Ins. Co. of N. Am.*, 321 N.Y.S.2d 815, 817 (1st Dep't 1971) ("If the parties to a contract adopt a provision which contravenes no principle of public policy and is not ambiguous, the courts have no right to relieve one of them from disadvantageous terms by a process of interpretation."); *Innophos, Inc. v. Rhodia, S.A.*, 832 N.Y.S.2d 197, 199 (1st Dep't 2007) ("Had the parties wished to limit [the] expansive verbiage . . . they could have easily provided for such specific, enumerated exceptions to their agreement's chosen sweeping words."), *aff'd*, 882 N.E.2d 389 (N.Y. 2008); *Tavoulareas v. Bell*, 738 N.Y.S.2d 847, 847 (1st Dep't 2002) (holding that a release of "all . . . actions, cause and causes of action, suits, . . . claims and demands whatsoever, in law or in equity" that "resulted from negotiations in which each party was

represented by counsel, unambiguously manifests the intent to resolve all claims between the parties" and dismissing the motion on the basis of such release).

Finally, a party "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while [seeking to enforce] the rest. A contract 'should be read to give effect to all its provisions.'" *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)).

> [A party] cannot accept the whole contract, except for a part it later chooses not to accept, and should not be able to slip out of the deal after it eventually found [that a contractual] mechanism did not result in decisions favorable to it. That is part of the calculated business risk it undertook. . . . *The law of contracts does not allow [a party] to pick and choose among the provisions of its contract in this fashion.*

*Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 623 N.E.2d 531, 535 (N.Y. 1993) (emphasis added). The Claims Traders have already realized the benefits of the bargains of the Settlements. Unsecured claims have been allowed against LOTC, and LOTC has distributed 100% of the Allowed amounts of such claims. Having accepted the benefits of the bargains, Plaintiffs should not now be permitted to pick and choose which provisions of the Settlements suit their purposes and pursue claims that were released in exchange.

Although certain of the releases contain carve-outs, those carve-outs pertain to the "the rights and obligations of the Parties set forth under [each Settlement]," to "claims which are not related to the Agreement Documents or the Transactions thereunder . . . " or to the "Allowed Claims." (Miller Decl. Ex. A § 2; *see id.* Ex. B § 2, Ex. C § 2, Ex. D ¶ 6, Ex. E § 5(a), Ex. F § 3.) Such limited carve-outs do not preserve claims for postpetition interest, and the Settlements makes no mention of interest, postpetition or otherwise. To the contrary, the carve-

18

outs demonstrate that the parties knew how to draft exclusions from the broad releases, but did not include a carve-out for postpetition interest.

### B.   The Claims Traders Are Bound by the Releases in the Settlements

Under New York law, the releases are enforceable against the Claims Traders to the fullest extent that they were enforceable against the Contract Counterparties.  "It is elementary ancient law that an assignee never stands in any better position than his assignor.  He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor."  *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 325 N.E.2d 137, 139 (N.Y. 1975).

In addition, the Settlements governing claims 23526, 66121, 22613, 15919, and 19303 reiterate that they are binding on the Contract Counterparties' successors and assigns— *i.e.*, the Claims Traders.  Specifically, each of these Settlements states, in substantially identical language that "[t]he provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties *and their respective successors and assigns*."  (Miller Decl. Ex. A § 8, Ex. B § 10, Ex. C § 11, Ex. E § 16, Ex. F § 12 (in each of the foregoing, emphasis added).)  It is incontrovertible that the Claims Traders, which now hold the Satisfied Claims that the Contract Counterparties held, constitute the Contract Counterparties' "successors and assigns."

Plaintiffs admit that they acquired the Satisfied Claims subject to the Settlements (Compl. ¶¶ 14–16) and, in any event, are bound by black-letter law.  There can be no dispute, therefore, that the releases and limitations on recovery set forth in the Settlements apply to the Satisfied Claims, whether held by the Contract Counterparties or the Claims Traders. *N.Y. & Presbyterian Hosp.*, 958 N.E.2d at 93.

For these reasons, the Court should find that the Plaintiffs' claims for postpetition interest in respect of the Satisfied Claims have been released and dismiss the Complaint because

there is no "case of actual controversy" that can be resolved through a declaration of parties' rights under the derivatives contracts and because Plaintiffs have not stated and cannot state a claim for which relief can be granted.

## III.   Alternatively, Any Transfer That Increased the Amounts of Claims Against LOTC Violated the Automatic Stay and Is Void *Ab Initio*

Alternatively, if the Court finds that the Claims Traders are entitled to postpetition interest, the Complaint still must be dismissed because any transfer that increased the amount of postpetition interest claims against LOTC's estate was a violation of the automatic stay and void *ab initio*.

The automatic stay went into effect for LOTC on October 3, 2008 and remains in effect today.  11 U.S.C. § 362(a); Plan § 13.5; Confirmation Order ¶ 54.

"So central is the [automatic stay] to an orderly bankruptcy process that 'actions taken in violation of the stay are void and without effect.'"  *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992) (quoting *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988)).

The automatic stay bars any postpetition action that would have the effect of increasing the amount of a creditor's claim.  *See In re Solutia, Inc.*, 379 B.R. 473, 485 (Bankr. S.D.N.Y. 2007) (holding that deceleration of an indenture constitutes "*a direct attempt to get more property from the debtor and the estate,* either *through a simple increase in the amount of a pro-rata plan distribution* or through recovery of a greater amount of the collateral which secures the claim") (emphasis added).  An action that "significantly impacts the debtors' estate and creditors . . . by enhancing claims . . . is, therefore, *the type of action that courts have routinely refused to permit under section 362(d)(1) of the Bankruptcy Code.*"  *MPM Silicones*, 2014 WL 4436335 at *23 (Bankr. S.D.N.Y. Sept. 9, 2014) (Drain, J.) (emphasis added); *In re Texaco, Inc.*,

WEIL:\95092183\6\58399.0011

73 B.R. 960, 968 (Bankr S.D.N.Y. 1987) (declining to modify automatic stay to permit noteholders to issue acceleration notice that would have had the effect of increasing interest rate on notes during bankruptcy case).  *Cf. In re AMR Corp.*, 730 F.3d 88, 103 (2d Cir. 2013) (holding that creditor's request to issue notice to decelerate maturity of loans was barred by the automatic stay and properly rejected by the Bankruptcy Court).  Actions to enhance claims against the estate are actions to "create a *different* claim than existed on the bankruptcy petition date" and, therefore, are clearly barred by the automatic stay.  *MPM Silicones*, 2014 WL 4436335 at *19, *22; *see Solutia*, 379 B.R. at 485; *Texaco*, 73 B.R. at 968.

Here, the Claims Traders attempt *exactly* what the automatic stay prohibits: "a direct attempt to get more property from the debtor and the estate," *Solutia*, 379 B.R. at 485, based upon a postpetition action, here the transfers of the Satisfied Claims.  If the Claims Traders assert that their cost-of-funds rates are higher than those of the Contract Counterparties and should supplant the lower cost-of-funds rates of the Contract Counterparties, which is the only circumstance in which the Claims Traders would benefit from the declaration they are seeking in this proceeding, the transfers of the Satisfied Claims to the Claims Traders would violate the automatic stay.  Accordingly, the Claims Traders are not entitled to the declaration they seek.

WEIL:\95092183\6\58399.0011

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Plan Administrator respectfully requests that the Court (a) find that interest is not payable to the Claims Traders or find that any claims transfer for postpetition interest that increased the amount of such claims was in violation of the automatic stay and void *ab initio*; (b) dismiss the Complaint; and (c) grant such other and further relief as is just and appropriate.

Dated:    September 17, 2014
          New York, New York

/s/ Ralph I. Miller
WEIL, GOTSHAL & MANGES LLP
Ralph I. Miller
Robert J. Lemons
Garrett A. Fail
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers OTC Derivatives Inc.*

WEIL:\95092183\6\58399.0011